UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **LORA ANN GORE,** | } |
| | } |
| Plaintiff, | } |
| | } |
| v. | } |
| | } Case No.: 4:20-cv-1783-ACA |
| **SOCIAL SECURITY** | } |
| **ADMINISTRATION,** | } |
| **COMMISSIONER,** | } |
| | } |
| Defendant. | } |

## MEMORANDUM OPINION

Plaintiff Lora Ann Gore appeals the Social Security Commissioner's denial of her claims for a period of disability, disability insurance benefits, and supplemental security income. Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

### I.   PROCEDURAL HISTORY

Ms. Gore applied for a period of disability, disability insurance benefits, and supplemental security income on June 21, 2018, alleging disability beginning February 28, 2017. (R. at 194–203). The Commissioner initially denied Ms. Gore's claims (*id.* at 87–96), and Ms. Gore requested a hearing before an Administrative

Law Judge ("ALJ") (*id.* at 99–100). After holding a hearing (*id.* at 31–52), the ALJ issued an unfavorable decision (*id.* at 13–30). The Appeals Council denied Ms. Gore's request for review (*id.* at 1–6), making the Commissioner's decision final and ripe for the court's judicial review. *See* 42 U.S.C. § 405(g).

## II.   STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks omitted). The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel*, 631 F.3d at 1178 (quotation marks omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable

and supported by substantial evidence." *Henry*, 802 F.3d at 1267 (quotation marks omitted). Moreover, the court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

### III.  ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ determined that Ms. Gore had not engaged in substantial gainful activity since her alleged disability onset date, February 28, 2017. (R. at 18). The ALJ found that Ms. Gore's panic disorder with agoraphobia, major depressive disorder, and polysubstance abuse were severe impairments. (*Id.* at 18–19). However, the ALJ found that Ms. Gore's acute instances of chest pain, abscesses, dysuria, and acute bronchitis were not severe impairments. (*Id.* at 19). The ALJ then concluded that Ms. Gore did not suffer from an impairment or combination of

impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 19–20).

The ALJ found that Ms. Gore had no past relevant work. (R. at 23). After considering the evidence of record, the ALJ determined that Ms. Gore had the residual functional capacity to perform a full range of work at all exertional levels but with a number of non-exertional limitations. (*Id.* at 20–23). Based on this residual functional capacity and the testimony of a vocational expert, the ALJ found that jobs existed in significant numbers in the national economy that Ms. Gore could perform, including crate liner, janitor, and garment sorter. (*Id.* at 24). Accordingly, the ALJ determined that Ms. Gore has not been under a disability, as defined in the Social Security Act, between the alleged onset date through the date of the ALJ's decision. (R. at 24–25).

## IV. DISCUSSION

Ms. Gore argues that the court should reverse and remand the Commissioner's decision for three reasons: (1) because the ALJ failed to properly evaluate the opinion of consultative examiner, Dr. Samuel Fleming; (2) because the ALJ improperly applied the pain standard and failed to accept her testimony; and (3) because the ALJ's decision is not based on substantial evidence. (Doc. 11 at 13–29). The court will address each issue in turn.

1. Evaluation of the Consultative Examiner's Opinion

Ms. Gore's first argument is that the ALJ did not properly evaluate the opinion of consultative examiner, Dr. Fleming. (Doc. 11 at 13–22).

Before her alleged disability onset date, Dr. Fleming conducted one neuropsychological examination of Ms. Gore and opined that she had a "poor prognosis." (R. at 377–381). Dr. Fleming also opined that Ms. Gore would have "difficulty understanding, carrying out, or remembering instructions" and she did "not seem emotionally capable of responding appropriately to supervision, coworkers or work pressures in the work setting." (*Id.* at 381). Further, Dr. Fleming noted that Ms. Gore's "limitations are primarily due to her attitude problems and core personality" in addition to the fact that she was "minimally motivated during the exam." (*Id.*). The ALJ found Dr. Fleming's assessment unpersuasive because the evaluation was considered in a prior filing, Ms. Gore was "not entirely motivated during the examination," and the opinion was "not wholly consistent with the newer evidence of record." (R. at 23).

Ms. Gore raises three alleged errors related to the ALJ's treatment of Dr. Fleming's medical opinion.

First, Ms. Gore appears to argue that the ALJ substituted her opinion for that of Dr. Fleming. (Doc. 11 at 14–15). Ms. Gore cites a number of cases that stand for this general proposition, but she advances no specific argument regarding how the

5

ALJ did so in this case. Nevertheless, although an ALJ "may not make medical findings" herself, the ALJ's responsibility it "to resolve conflicting medical opinions." *Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 543 (11th Cir. 2016) (finding that "the ALJ did not usurp the role of a physician" by weighing the credibility of a medical expert's opinion "in light of other record evidence"). And that is what the ALJ did here.

Second, citing *McClurkin v. SSA*, 625 F. App'x 960 (11th Cir. 2015), Ms. Gore argues that the ALJ "failed to state with at least 'some measure of clarity' the grounds for his decision in repudiating the opinion of an examining physician." (Doc. 11 at 15). But the ALJ's specific explanation for rejecting Dr. Fleming's opinion (*see* r. at 23) belies Ms. Gore's position. Therefore, this argument is not persuasive.

Third, Ms. Gore argues that the court should find that the ALJ improperly evaluated Dr. Fleming's opinion based on the Seventh Circuit's "degree of suspicion" standard adopted in *Wilder v. Chater*, 64 F.3d 335 (7th Cir. 1995). (Doc. 11 at 16–22). The Eleventh Circuit has not adopted this standard. Therefore, this court will not follow it either. But even if *Wilder* were controlling, *Wilder* is distinguishable from the facts of this case. In *Wilder*, the consulting physician's opinion was the only evidence of the claimant's impairments. *See Wilder*, 64 F.3d at 337–38. Here, the record contains other evidence and opinions about Ms. Gore's

mental limitations. (*See* R. at 55–84, 403–415, 422–472; *see generally id.* at 621–1011). Accordingly, *Wilder* does not assist Ms. Gore. *See Jackson v. Soc. Sec. Admin., Comm'r*, 779 F. App'x 681, 685 (11th Cir. 2019) (explaining that *Wilder* is inapposite where the ALJ does not reject the only medical evidence about a claimant's impairments).

2. Substantial Evidence Supports the Evaluation of Ms. Gore's Subjective Testimony

Ms. Gore's second argument is that the ALJ's "analysis is deficient" because the ALJ did not apply the proper pain standard. (Doc. 11 at 25).

To show a disability based on subjective pain testimony, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain, or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed symptoms. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). Once an ALJ identifies an underlying medical condition that could reasonably be expected to produce a claimant's subjective symptoms, the ALJ evaluates the claimant's statements about the intensity, persistence, and limiting effects of the symptoms in relations to the objective medical evidence and other evidence. 20 C.F.R. § 404.1529(c)(4). If the ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225. The court will not disturb

7

an ALJ's clearly articulated credibility finding if it is supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

Here, Ms. Gore alleged that she is disabled due to her "mental health symptoms, including her panic attacks, mood issues, and handling stress." (R. at 21). The ALJ determined that Ms. Gore's panic disorder with agoraphobia, major depressive disorder, and polysubstance abuse could reasonably be expected to produce some of Ms. Gore's alleged symptoms. (R. at 18, 21). However, the ALJ also determined that Ms. Gore's statements about the intensity, persistence, and limiting effects of these symptoms were not consistent with the medical evidence and other evidence in the record. (R. at 21).

In particular, the ALJ noted that while Ms. Gore "certainly had some symptomology, she generally had normal to some moderate findings overall in the evidence of record." (R. at 21). To support this determination, the ALJ cited to general (*see id.* at 403–415, 422–454; *see generally id.* at 621–1011) and specific (*see id.* at 55–84, 455–472) mental health treatment records. (R. at 21–22). In addition, the ALJ noted inconsistencies between Ms. Gore's allegations as to being disabled physically and mentally and the daily activities Ms. Gore described in a function report, "namely her ability to perform personal care, go to doctor's

appointments, handle money, and go shopping or out in public when necessary." (*Id.* at 22; *see also id.* at 254–61).

Ms. Gore suggests that it was improper for the ALJ to consider objective evidence in the evaluation of Ms. Gore's subjective complaints. (Doc. 11 at 23–27). While an ALJ may "not evaluate an individual's symptoms based *solely* on objective medical evidence" SSR 16-3P, 2017 WL 5180304, at *4 (October 25, 2017) (emphasis added), it is still the ALJ's duty to evaluate "the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." *Id.* at *2. As discussed above, the ALJ considered not only the objective medical findings in considering Ms. Gore's subjective testimony, but also the consistency of Ms. Gore's own descriptions of her daily activities. (R. at 21–22). It was thus proper for the ALJ to consider the lack of supporting objective evidence when evaluating Ms. Gore's subjective testimony.

### 3. Substantial Evidence Supports the RFC Determination

Ms. Gore's third argument is that the ALJ's decision is not based on substantial evidence because the ALJ relied on vocational expert testimony that was not based on a correct or full statement of Ms. Gore's limitations. (Doc. 11 at 27–29). "In order for a [vocational expert's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). Ms.

Gore claims that the ALJ relied on testimony from the vocational expert based on an incomplete hypothetical because the hypothetical did not include the limitations identified by Dr. Fleming. (Doc. 11 at 27–29). However, an ALJ is not required to include findings in a hypothetical question that the ALJ properly rejects as unsupported by the record. *Crawford*, 363 F.3d at 1161.

As explained above, substantial evidence supports the ALJ's decision to reject Dr. Fleming's findings. *See supra* pp. 5–7. Therefore, Ms. Gore has not demonstrated that the ALJ was required to include those limitations in the hypothetical question. *See Crawford*, 363 F.3d at 1161; *Wright v. Comm'r of Soc. Sec.*, 327 F. App'x 135, 137 (11th Cir. 2009) ("[I]f additional impairments asserted by a claimant are not supported by substantial evidence, they do not need to be included in a hypothetical.").

## V. CONCLUSION

For the reasons given above, the court concludes that the Commissioner's decision is supported by substantial evidence and the Commissioner applied proper legal standards in reaching the decision. As such, the court **WILL AFFIRM** the Commissioner's final decision. The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this September 22, 2021.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE